UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                                Case No. 3:22-CR-87 JD

KEVIN L. BRAZIER

**OPINION AND ORDER**

Defendant Kevin L. Brazier moved under 28 U.S.C. § 2255 to vacate his conviction for

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He claims that his

conviction and sentence violated his right to bear arms under the Second Amendment, pursuant

to the Supreme Court's holding in *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct.

2111 (2022). He also insists that he received ineffective assistance of counsel because his

attorney, David Vandercoy, didn't move to suppress evidence, failed to argue that he didn't

possess a gun, didn't explain the consequences of entering into a plea agreement, and hurried

him into signing the plea agreement. For the reasons stated below, the Court will dismiss his

petition.

### A. Factual and Procedural Background

On December 14, 2022, Mr. Brazier was charged in a one-count indictment with being a

felon in possession of a firearm.[1] (DE 1.) On March 14, 2023, the parties filed a plea agreement

with the Court. In the Agreement, Mr. Brazier agreed to plead guilty to the charge in exchange

---

[1] Before being charged in this case, Mr. Brazier had at least four felony convictions in three states:
vehicular hijacking (Illinois); receiving stolen property (Ohio); resisting law enforcement; domestic battery in the
presence of a child; and nonsupport of a dependent child (Indiana); (PSR, DE 28 ¶¶ 40, 42, 66, 90, & 97.)

for the Government's promise to recommend that the Court grant him a reduction for acceptance

of responsibility under U.S.S.G. § 3E1.1(b) and impose a sentence "at the low end of the

applicable guideline range, said guidelines range to be determined by the Court." (Plea

Agreement, DE 17 ¶ 9(h).) In the Plea Agreement, Mr. Brazier stated that he discussed with Mr.

Vandercoy, and understood, the charges and the proceedings against him:

> 4. I have received a copy of the Indictment and have read and discussed it with my lawyer, and I believe and feel that I understand every accusation made against me in this case.
>
> 5. I have told my lawyer the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment and believe and feel that my lawyer is fully informed as to all such matters. My lawyer has since informed me and has counseled and advised with me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.
>
> . . .
>
> 11. I believe and feel that my lawyer has done all that anyone could do to counsel and assist me and that I now understand the proceedings in this case against me.

(*Id.* ¶¶ 4–5, 11.)

He acknowledged this offense conduct, admitting that he possessed a firearm as a

felon:

> On August 26, 2022, in South Bend in the Northern District of Indiana, I possessed one loaded Canik handgun while I was in a car. Police found the Canik handgun in plain sight in front of me on the dashboard of the car in which I was sleeping. I do not dispute that the Canik handgun was manufactured outside the State of Indiana, so by its presence in Indiana, it must have been in and affecting interstate or foreign commerce. In June of 2016, I was convicted of a crime punishable by more than one year imprisonment, and I was in fact sentenced to 30 months in the Indiana Department of Correction, with 18 months suspended. At the time I possessed the firearm in August of 2022, I knew that I had previously been convicted of a felony punishable by over one year of imprisonment.

(*Id.* ¶ 9(b).)

Mr. Brazier also affirmed the free and voluntary nature of his intent to plead guilty:

12. I declare that I offer my plea of GUILTY freely and voluntarily and of my own accord, and no promises have been made to me other than those contained in this petition, nor have I been threatened in any way by anyone to cause me to plead GUILTY in accordance with this petition.

(*Id*. ¶ 12.)

As part of the Agreement, Mr. Brazier partially waived his right to challenge his sentence either on appeal or in any collateral proceeding:

I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to a proceeding under Title 28, United States Code, Section 2255.

(Plea Agreement, DE 17 ¶ 9(e).)

On March 31, 2023, consistent with the Plea Agreement, Mr. Brazier pleaded guilty to the charge in the Indictment. At the beginning of the change-of-plea hearing, Magistrate Judge Michael Gotsch explained to Mr. Brazier that, if he needed at any point to speak to his attorney in private, he'd be provided that opportunity:[2]

COURT: Now, I know you're being represented by Mr. Vandercoy, and we've talked about your right to counsel before. If at any point in time during the hearing you feel it's necessary to have a private conversation with Mr. Vandercoy, let me know that, and I'll move you into a separate room. When we're in the big room like we are now, there's only four boxes, but it's like The Brady Bunch. Everybody that's on here can hear one another, and everything that's being said is being recorded. If I move you into a room with Mr. Vandercoy, you're there with him alone. No one is listening in, and it's not being recorded. So you can have a private conversation with counsel if that's necessary. So if at any point in time you feel you

---

[2] Due to the ongoing coronavirus pandemic as well as an ongoing influenza epidemic, the plea hearing took place by video conference at the request of Mr. Brazier. (Plea Hrg. Tr., DE 61 at 2.)

want to do that, Mr. Brazier, just tell me, and I'll get you moved into a breakout room. Okay?

THE DEFENDANT: All right. Thank you.

(Plea Hrg. Tr., DE 61 at 9.)

During the hearing, Mr. Brazier stated under oath that he signed the plea agreement,

understood his constitutional rights, and knew that he was waiving his appeal rights—except for

his right to effective assistance of counsel; he also stated that he was entering the plea

voluntarily, without any coercion:

THE COURT: And you also know that if you had a trial and you were convicted at that trial, you'd have the right to appeal both your conviction and your sentence with the help of a lawyer to the Court of Appeals?

THE DEFENDANT: Yes, I do.

(*Id*. at 17.)

. . .

THE COURT: And you understand that the judge can give you, you know, all three, right? You can get time in prison, a fine, and time on supervised release, right?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Okay. Then I'm skipping on to page 5 [of the Plea Agreement]. I'm in paragraph 9(e). 9(e) says this, down about seven lines: I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, § 3742, or any post-conviction proceeding, including, but not limited to, a proceeding under Title 28, United States Code, § 2255.

That's the waiver provision I talked about before. You're waiving your right to file an appeal. You're waiving your right to file a post-conviction proceeding regarding your conviction and your sentence unless you can demonstrate ineffective [assistance] of counsel. You understand that?

THE DEFENDANT: Yes, I do.

(*Id*. at 27–28.)

. . .

THE COURT: Okay. At some point in time, did you receive a copy of a document called an indictment, which charged you and named you as a defendant?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: And did you read it over?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: And did you speak with Mr. Vandercoy about it?

THE DEFENDANT: Yes, I did.

THE COURT: And did he answer any questions you had to your satisfaction?

THE DEFENDANT: Yes, he did, Your Honor.

(*Id*. at 19.)

. . .

THE COURT: . . . So, Mr. Brazier, let me ask you these questions. Have you had enough time to discuss your case with your lawyer, Mr. Vandercoy?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: And, specifically, have you had enough time to discuss this plea agreement with him?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: Do you believe that Mr. Vandercoy has properly represented you in every way during the course of these proceedings?

THE DEFENDANT: Yes, I have, Your Honor. Thank you.

THE COURT: And are you satisfied with his legal representation of you?

THE DEFENDANT: Yes, I am

(*Id*. at 11–12.)

. . .

THE COURT: Okay. Based on everything we've discussed so far, understanding everything that we've discussed, and all the possible consequences, is it still your desire to plead guilty to Count 1?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Now, has anyone threatened you or anyone else or has anyone forced or pressured you or anyone else in any way to make you plead guilty today?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: Has anyone made any promises or assurances or predictions to you or to anyone else to cause you to plead guilty today?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: Has Mr. Vandercoy made any promises or predictions to you about what sentence you might receive, other than explaining the guidelines?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: As you and I are here together today, it is impossible for either of us to know what Judge DeGuilio is going to do at sentencing. I mean, we just can't know that. Right?

THE DEFENDANT: Right.

THE COURT: Are you pleading guilty of your own free will?

THE DEFENDANT: Yes, I am, Your Honor.

THE COURT: As I mentioned before, you and your attorney and the government have entered into this written plea agreement. Is that right?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Have you read it over?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Have you discussed it with Mr. Vandercoy, your attorney?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Did you understand it?

THE DEFENDANT: Yes, I did.

THE COURT: And did you sign it?

THE DEFENDANT: Yes, I did, Your Honor.

(*Id.* at 24–26.)

. . .

THE COURT: . . .  Any questions of me regarding penalties at this time, Mr. Brazier?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: Okay. Then I might have explained it well. Okay.

So with respect to penalties, the United States Sentencing Commission has issued guidelines for judges to follow when determining what the appropriate sentence is in a federal criminal case. I'm assuming that you and Mr. Vandercoy have discussed how the federal sentencing guidelines would apply in your particular circumstances.

THE DEFENDANT: Yes, sir. Yes, we have, Your Honor.

(*Id.* at 22–23.)

On July 20, 2023, the Court sentenced Mr. Brazier to 57 months of imprisonment—consistent with the low end of the guidelines range and the recommendation of the parties—and 2 years of supervised release. Mr. Brazier did not appeal his conviction or sentence.

On March 18, 2024, Mr. Brazier moved to vacate his conviction and sentence under § 2255. Eleven days after briefing was complete, on July 16, 2024, he filed what he termed a "motion to vacate, set aside, or correct sentence due to ineffective assistance of counsel pursuant to 28 U.S.C. § 2255." (DE 52.) Following several extension requests by both sides, the issues raised in that filing have now also been fully briefed.

### B.  Standard of Review

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). "Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Bousley v. United States*, 523 U.S. 614, 621(1998) (quotation marks and citations omitted).

When interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe the pleadings liberally. *United States v. Rossiter*, 2016 WL 4611013, at *4 (N.D. Ind. Sept. 6, 2016) (collecting cases). Therefore, if a court can reasonably read the petitioner's pleadings to state a valid claim, the court should do so even if the pleadings do not cite proper legal authority, confuse various legal theories, use poor syntax and sentence construction, or display a lack of familiarity with pleading requirements. *Id.* (citing *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). However, a district court is not

expected to assume the role of an advocate for a pro se litigant, and it cannot rewrite the litigant's petition to include claims that the litigant did not present. *Id.*

A § 2255 petitioner needs to submit evidence to support his claims; "naked assertions" are not enough. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002). "[T]he petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (citation omitted). A petition "signed under penalty of perjury" may also suffice to verify the petitioner's allegations so they "*become* evidence." *Kafo*, 467 F.3d at 1068. But unsworn allegations are "not even a scintilla of evidence." *Galbraith*, 313 F.3d at 1008. Verification is a threshold requirement: a "sworn affidavit with specific details" showing the petitioner has "actual proof of the conduct alleged [is] required as a predicate to securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1010; *see also Kafo*, 467 F.3d at 1067. Thus, a petition presenting "merely bare allegations," rather than a "detailed and specific affidavit," fails "the threshold requirement for securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1009. When a § 2255 petitioner fails to file an affidavit or sworn statement but his allegations otherwise would be sufficient, courts generally offer a chance to fix the defect. *Kafo*, 467 F.3d at 1070–71. Still, requiring sworn testimony is more than a "mere technicality"; it "ensure[s] that a petitioner can provide some evidence . . . however minimal" to back his claim. *Id*. at 1068–69.

A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### C. Discussion

### (1) *Mr. Brazier's Motion to Amend*

Before addressing the parties' contentions, the Court must first determine their scope. In his initial filing, relying on *Bruen*, 142 S. Ct. 2111, Mr. Brazier argued that 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to him. Eleven days after briefing on that issue concluded, Mr. Brazier submitted an additional basis for vacating his conviction and sentence, claiming ineffective assistance of counsel. He alleged that his attorney failed to file a motion to suppress, neglected to argue that he did not possess a firearm, failed to explain the consequences of entering a plea agreement, and pressured him into signing it. The Government contends that this later filing constitutes a second successive petition under § 2255 and should therefore be dismissed. Alternatively, the Government argues that, if the filing is construed as an attempt to amend the original motion, the amendments are untimely and should be denied.

Because no final judgment has been entered on Mr. Brazier's motion, the Court construes his additional motion as a motion to amend—that is, to add new claims to his motion under § 2255. *See Rutledge v. United States*, 230 F.3d 1041, 1051 (7th Cir. 2000) ("Until a final ruling has been issued, a district court must consider a petitioner's request to amend his § 2255 motion, though the court need not grant the requested amendments." (citing *Johnson v. United States*, 196 F.3d 802, 805–06 (7th Cir. 1999)). And while Mr. Brazier named his filing a "motion . . . pursuant to 28 U.S.C. § 2255," "[c]ourts may ignore the label attached to a motion and recharacterize the motion based on its substance—usually to protect a pro se litigant's rights." *United States v. Sutton*, 127 F.4th 1067, 1071 (7th Cir. 2025).

Leave to amend shall be freely granted when justice so requires. *Vitrano v. United States*, 721 F.3d 802, 805 (7th Cir. 2013) (*Vitrano IV*)[3]; *see also Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999) (the Antiterrorism and Effective Death Penalty Act "allows every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case— is an entitlement to add or drop issues while the litigation proceeds.") But justice generally does not require leave to amend if the movant demonstrates undue delay, bad faith, or dilatory motive. *Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC*, 499 F.3d 663, 666 (7th Cir. 2007). If the amendment "substitutes entirely one petition for another" or is not an amendment "in any fair sense of the word," the Court may deny the motion to amend as a bad faith attempt at "an end-run around on AEDPA's limitations on second or successive motions." *Vitrano IV*, 721 F.3d at 807–08. In other words, if the motion is masquerading as a second successive petition, it must be denied because the defendant would first need to persuade a court of appeals to certify the motion and authorize the district court to hear it. *See* 28 U.S.C. §§ 2244(a)–(b), 2255(h). Without authorization from the court of appeals, the district court has no jurisdiction to hear a successive petition under § 2255. *Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013) (citing *Burton v. Stewart*, 549 U.S. 147, 152–53 (2007)).

But that lack of expertise alone should not preclude consideration of his additional claims—though, as discussed below, they ultimately fail for other reasons. *Cf. United States v. Rossiter*, 2016 WL 4611013, at *4 (N.D. Ind. Sept. 6, 2016) (when interpreting a pro se petitioner's complaint or § 2255 motion, district courts have a "special responsibility" to

---

[3]The Court refers to *Vitrano v. United States*, 643 F.3d 229 (7th Cir. 2011), as *Vitrano III*, and *Vitrano v. United States*, 721 F.3d 802 (7th Cir. 2013), as *Vitrano IV*, to reflect their chronological order within the series of appellate decisions involving the same defendant. Though the opinions themselves do not use these numerical labels, this convention helps to distinguish between them for clarity.

construe the pleadings liberally) (collecting cases). The Government argues that Mr. Brazier's motion is a second successive motion under § 2255. However, it does not point to any case where a motion with a similar posture was dismissed for lack of jurisdiction. The Government relies on *Johnson*, 196 F.3d 802, and *Vitrano IV*, 721 F.3d 802, but in both cases, the Seventh Circuit vacated the district courts' dismissals. In those cases, the motions were filed after the original § 2255 motions but before the original motions had been resolved. True, in both cases the court identified the characteristics of what a successive petition may look like even before a judgment is entered in the case, but those characteristics aren't present here. For example, the court stressed the requirement for the finality of the original motion while acknowledging that the final disposition did not have to come through a decision on the merits (e.g., it could be a defendant dismissing his original motion). But there's no finality of any kind here, and while the briefing on the original claims was finished before Mr. Brazier filed his motion to amend, only eleven days elapsed. Because the Court is not dealing with a second collateral attack under a new name, it will not deny Mr. Brazier's motion to amend. In reaching this conclusion, the Court follows the guidance of the very cases on which the Government relied: "As we explained in *Johnson*, 'a proposal to amend one's first motion is not a "second" motion.' Restrictive as it is, 'the AEDPA allows every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Vitrano III*, 643 F.3d at 233–34 7th Cir. 2011).

And it is in the interest of justice to allow Mr. Brazier to amend his motion. He is not abusing the judicial process, filing in bad faith, or acting with a dilatory motive. Instead, as a review of the filings shows, Mr. Brazier has made consistent efforts to advance his claims to the best of his ability, often requesting extensions to file his briefs. While the subject matter in the

motion to amend is new, it arises from the same court proceeding. Although the motion was filed late, the Court recognizes that pro se prisoner litigation is often prolonged because of the difficulties prisoners face in researching and drafting their motions. The Court sees no dilatory intentions here; in fact, it is in Mr. Brazier's interest to have his habeas corpus petition decided expediently. This is not to say that a defendant can indefinitely keep raising new grounds to challenge his conviction and sentence: district courts have wide discretion to deny motions to amend. *See Vitrano III*, 643 F.3d at 234 ("We reiterated in *Rutledge*, 230 F.3d at 1051, and *Johnson*, 196 F.3d at 805, as we do here, that district courts have wide discretion in deciding whether to grant leave to amend."). All it means is that, here, legitimate grounds to amend exist. The Court thus will consider Mr. Brazier's ineffective assistance of counsel claim in addition to his claim under *Bruen*.

### (2) *Waived and Procedurally Defaulted Claim*

Mr. Brazier claims that his conviction under § 922(g)(1) and his sentence violate the Second Amendment as applied to him. The Government responds by first arguing that Mr. Brazier's argument is barred by his waiver in the plea agreement.

"Plea agreements are contracts through which defendants bargain away fundamental rights." *Cross v. United States*, 892 F.3d 288, 298 (7th Cir. 2018). Here, Mr. Brazier agreed to waive his right to appeal or contest his conviction, including through a § 2255 motion, except on the grounds of ineffective assistance of counsel. Such waivers are enforceable if made knowingly and voluntarily, and if the issues raised fall within the scope of the waiver. *See Plunkett v. Sproul*, 16 F.4th 248, 253 (7th Cir. 2021). The Court of Appeals for the Seventh Circuit has "only a 'few narrow and rare' grounds for not enforcing a voluntary and effectively-counseled

waiver of direct appeal or collateral review. For instance: if a district court relied on a 'constitutionally impermissible factor' like race or gender; if the sentence exceeded the statutory maximum; or if the proceedings lacked a "minimum of civilized procedure." *Oliver v. United States*, 951 F.3d 841, 844 (7th Cir. 2020) (citations omitted). None of them are implicated here.

In *Oliver*, the Seventh Circuit has upheld a waiver in the context of collateral challenge even for claims that could be characterized as jurisdictional or constitutional, emphasizing the finality of plea agreements. *Id*. 951 F.3d at 845 ("Contract principles make [the defendants'] agreements enforceable even against a so-called 'jurisdictional' challenge. After all, one major purpose of an express waiver is to account in advance for unpredicted future developments in the law."). "Plea-bargain waivers allocate the risk of the unknown for both sides: 'By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one.'" *Id.* (quoting *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005)). In short, there is no "general 'constitutional-argument exception' to waivers in plea agreements." *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000).

Mr. Brazier's challenge under the Second Amendment falls squarely within the scope of the waiver. Mr. Brazier waived his right to "appeal or to contest [his] conviction . . . or the manner in which [it] was determined or imposed, to any Court on *any* ground . . . including . . . any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255[.]" (Plea Agreement, DE 17 ¶ 9(e).) (emphasis added).) The waiver could not have been broader. Additionally, at the change-of-plea hearing, Mr. Brazier, while sworn under oath, confirmed that he signed the plea agreement (Plea Hrg. Tr., DE 61 at 26), understood his Constitutional rights (*id.* at 15–19), understood that he was waiving his appeal as well as collateral attack rights (*id.* at 17, 24–25, 28), and no one forced him to plead

guilty (*id.* at 25). Having finished his colloquy, Judge Gotsch found that Mr. Brazier "has knowingly and voluntarily waived his constitutional rights." (*Id*. at 37.) In his motion under § 2255, Mr. Brazier has alleged nothing that would even suggest, let alone demonstrate through evidence, that his waiver of his right to bring a collateral challenge was flawed. As already noted, a § 2255 petitioner must submit evidence to support his claims; "naked assertions" are not enough. *Galbraith*, 313 F.3d 1001, 1008 (7th Cir. 2002). Such evidence can be presented in the form of an affidavit or a petition signed under penalty of perjury. This type of evidence is entirely absent from Mr. Brazier's submissions. And while the Court could grant leave to supplement the filings with such evidence and cure the defect, *Kafo*, 467 F.3d at 1070–71, the absence of even a clear allegation challenging the validity of the waiver renders such leave futile and therefore unnecessary. *See United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus, when the judge credits the defendant's statements in open court, the game is over."); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). The Court is thus left with no option but to enforce his waiver. *See Plunkett*, 16 F.4th at 256 (dismissing the defendant's appeal where "[i]n addition to signing a written waiver, which is presumed to be enforceable . . . [the defendant] also attested in his plea colloquy—to which we lend 'particular credence,'—to the fact that he made the waiver knowingly and voluntarily").

* * * * *

In addition, as the Government points out, Mr. Brazier has procedurally defaulted the *Bruen* claim because he failed to raise it on appeal. A habeas petitioner generally cannot assert any issues he might have raised on direct appeal. *See Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) ("Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted."). Even a defendant's challenge of "the voluntariness and intelligence of [his] guilty plea" will be procedurally defaulted unless it is "first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

If a claim is procedurally defaulted, it may "only be raised in a § 2255 proceeding if the defendant demonstrates that he is actually innocent, or that there is cause *and* actual prejudice." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) (emphasis added) (citation omitted). "Cause is defined as 'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. Prejudice means an error which so infected the entire trial that the resulting conviction violates due process.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Mr. Brazier presents no argument for these exceptions, thus waiving them. *See United States v. Edwards*, 733 F. Supp. 3d 644, 647–48 (N.D. Ill. 2024) (finding that the defendant who fails to develop an argument in a § 2255 motion waives that contention "for failure to develop it or support it with legal authority") (citing *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (noting on review of § 2255 petition that "this court has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived")). "[J]udges are not also required to construct a party's legal arguments

for him." *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). But even if the Court were inclined to overlook the waiver, there's no basis in the record to set aside the procedural default.

Beginning with cause, there is no indication that circumstances beyond Mr. Brazier's control—such as lockdowns, mail disruptions, or other impediments—interfered with his ability to file an appeal. *See U.S. ex rel. Noble v. Jackson*, 755 F. Supp. 2d 931, 940 (N.D. Ill. Dec. 16, 2010) ("To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court." (citing *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004)). In addition, while Mr. Brazier argues that his Second Amendment argument was unavailable to him at the time of his appeal, this contention is unpersuasive. The Supreme Court issued the *Bruen* decision on June 23, 2022, and each key event in Mr. Brazier's case—including the offense conduct, indictment, and sentencing—occurred thereafter: Mr. Brazier possessed the firearm as a felon on August 26, 2022 (PSR, DE 28 ¶ 8); he was indicted on December 14, 2022 (DE 1), and sentenced on July 20, 2023 (DE 34). Nor did *Bruen* create a Second Amendment right; it simply altered the analysis. *See Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) ("*Bruen* leaves no room for doubt: text and history, not a means-end analysis, now define the controlling Second Amendment inquiry." (citing *Bruen*, 142 S. Ct. at 2131)). So, the arguments he's attempting to raise now could have been raised on appeal. *See Smith v. Murray*, 477 U.S. 527, 537 (1986) ("[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."); *see also Reed v. United States*, 985 F.2d 880, 883 (7th Cir. 1993) ("All of the cases [the defendant] cites, however, were decided before he was sentenced. Thus, [the defendant] had a reasonable basis to raise this issue on direct appeal. As a result, he cannot satisfy the cause requirement by asserting the novelty of the claims raised in his

§ 2255 motion."). After all, even the cases he's relying on from the Eighth and Third Circuits that dealt with the constitutionality of § 922(g)(1)—*United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023), *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), and *United States v. Range*, 69 F.4th 96 (3rd Cir. 2023)—all predate his sentencing.

Mr. Brazier also could not show that he suffered actual prejudice, meaning that an error infected his conviction and sentence to the point that it violated due process. In fact, there was no error at all. Section 922(g)(1) does not violate the Second Amendment to the United States Constitution, so his conviction under the statute and the resulting sentence are all in accord with the law. After all, as this Court has found repeatedly, such a contention has little support. *See, e.g.*—

- *United States v. Keosackdy*, No. 3:22-CR-78 JD, 2023 WL 6805893, at *2 (N.D. Ind. Oct. 16, 2023) ("This Court has previously considered and rejected constitutional challenges to § 922(g)(1) in light of *Bruen*. In *United States v. Rice* the Court found that § 922(g)(1) satisfies the *Bruen* test and withstood both facial and as-applied challenges. 2023 WL 2560836. That is, the Court found that the regulation codified at § 922(g)(1) is consistent with the history and tradition of firearm regulation in the United States, even when applied to "non-violent" felons. *Id.* This conclusion is shared by the overwhelming majority of federal courts to review this question, including a thus far unanimous consensus among the Judges of this District who have confronted the question." (citing *United* States v. *Clark*, 1:20-CR-49, 2023 WL 2346284 (N.D. Ind. March 2, 2023) (Brady, C.J.); *United States v. Tribble*, 2:22-CR-85, 2023 WL 2455978 (N.D. Ind. Mar. 10, 2023) (Simon, J.));

- *United States v. Wright*, No. 2:22-CR-55 JD, 2024 WL 1528641, at *2 (N.D. Ind. Apr. 9, 2024) ("Since deciding *Rice* last year, the Court has received several requests to reconsider its holding in light of "new" developments in *Bruen* caselaw. The Court has considered each request as they came, reviewed the decisions of its sister courts, and found no basis to revisit the conclusion of Rice. *United States v. Young*, No. 2:22-CR-20, 2023 WL 8697936 (N.D. Ind. Dec. 15, 2023) (collecting cases and summarizing their holdings). While the majority of the caselaw offered by Mr. Wright has been considered and declined by the Court before, he does offer one relatively new case in his motion, *United States v. Neal* from the Northern District of Illinois. No. 20-CR-335, 2024 WL 833607 (N.D. Ill. Feb. 7, 2024). However, the Court has recently issued an order denying a *Bruen* challenge to § 922(g)(1) which cited to *Neal*. In denying that motion the Court explained why it did not find *Neal* persuasive authority to revisit the conclusion in *Rice*. *United States v. Williams,* No. 2:23-CR-59, DE 27 (N.D. Ind. April 9, 2024).");

- *United States v. Sherls*, No. 2:22-CR-13 JD, 2023 WL 8185665, at *2 (N.D. Ind. Nov. 27, 2023) ("Mr. Sherls asks the Court to revisit *Rice* in light of several subsequent cases. . . . The problem for Mr. Sherls' current motion . . . is that the Court has seen [the cited cases] before and has not been persuaded. In *United States v. Wade*, the Court considered whether *Range* and *Bullock* meant the holding of *Rice* should be reconsidered. No. 3:22-CR-3, 2023 WL 6037404 (N.D. Ind. Sept. 15, 2023). After thoroughly reviewing these cases, the answer was no. *Id*. at *2. Similarly, in *United States v. Keosackdy*, the Court considered whether *Atkinson* meant a reconsideration of *Rice* was necessary. No. 3:22-CR-78, 2023 WL 6805893, at *3 (N.D. Ind. Oct. 16, 2023). Once again, the answer was no. *Id*. The Court would also note several sister courts within this

19

Circuit have reached similar conclusions and upheld § 922(g)(1) against *Bruen*

challenges in light of *Atkinson* and the other precedent Mr. Sherls invokes." (citing

*United States v. Johnson*, No. 22-CR-254, 2023 WL 7284848 (E.D. Wis. Nov. 3, 2023);

*United States v. Jackson*, No. 20-CR-298, 2023 WL 7160921 (N.D. Ill. Oct. 31, 2023);

*United States v. Hardy*, No. 23-CR-129, 2023 WL 6795591 (N.D. Ill. Oct. 13, 2023)).

This is not only to say that Mr. Brazier did not suffer prejudice because *this* Court would

have likely denied his motion. As the court in *United States v. Nichols*, No. 20-CR-10067-JES,

2024 WL 890477, at *4 (C.D. Ill. Feb. 29, 2024), observed after surveying about 55 cases, nearly

every district court within the Seventh Circuit to consider this issue—with only two

exceptions[4]—has concluded that § 922(g)(1) survives a facial challenge under the *Bruen*

framework. In addition, "facial challenges to § 922(g)(1) have failed in nearly every circuit to

have considered them, both before and after the Supreme Court's decision in *Bruen*." *Nichols*,

2024 WL 890477, at *4 (collecting cases). The Court finds persuasive the rationale of the

majority of district courts in the Seventh Circuit and, for the reasons stated in its prior opinions,

concludes yet again that § 922(g)(1) is not facially unconstitutional.[5] "To establish prejudice,

'[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[4] By now, a year since *Nichols* was decided, there are a handful of such cases—still a small minority. The Court has addressed those cases before finding them unpersuasive. *United States v. Stork*, No. 2:21-CR-7 JD, 2024 WL 2955735, at *3–4 (N.D. Ind. June 12, 2024) (outlining its consideration of cases holding that § 921(g)(1) was unconstitutional).

[5] In his briefs, Mr. Brazier invokes a comparison to *United States v. Prince*, 700 F. Supp. 3d 663, 664 (N.D. Ill. 2023), but offers no supporting analysis. In *Prince*, the district concluded that § 922(g)(1) imposes a far greater burden on the right to keep and bear arms than historical categorical exclusions and that the government did not justify this burden based on the modern context of gun violence and firearm technology. As a result, the court dismissed the indictment against the defendant. Cases like *Prince* remain outliers in the Seventh Circuit, and this Court continues to stand with the others that have rejected that result. *See, e.g.*, *United States v. Calhoun*, 710 F. Supp. 3d 575, 2024 U.S. Dist. LEXIS 954, 2024 WL 36977, at *6 (N.D. Ill. Jan. 3, 2024) ("[T]he Court respectfully disagrees with the reasoning in *Prince* and instead joins the majority of courts in this District and across the nation to find that § 922(g)(1) is constitutional under the framework articulated by *Bruen* and explained in *Atkinson*.").

20

probability is a probability sufficient to undermine confidence in the outcome.'" *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (quoting *Strickland*, 466 U.S. at 694)). Regardless of any omission to advance a facial Second Amendment challenge to the statute under which Mr. Brazier was convicted and sentenced, there is no probability sufficient to undermine confidence in the outcome of Mr. Brazier's case. In short, Mr. Brazier has not shown that he suffered prejudice by failing to present a facial challenge to § 922(g)(1).

Likewise, Mr. Brazier would have fared no better with his as-applied challenge, so he cannot show prejudice here either.[6] The Seventh Circuit has "repeatedly rejected as-applied Second Amendment challenges" to § 922(g), *Kanter v. Barr*, 919 F.3d 437, 443 (7th Cir. 2019) (abrogated by *Bruen* for applying means-end scrutiny in evaluating the constitutionality of § 922(g)(1)), while acknowledging that such challenges have not been categorically foreclosed, *id.* (citing *United States v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010)). Even so, this is not such a case.

In the cases that have held that § 922(g)(1) was unconstitutional as applied to the defendant, the unifying factor is "the importance of distinguishing between violent and non-violent felony convictions." *Nichols*, 2024 WL 890477, at *6 (citing *United States v. Griffin*, SJC-21-693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023)); *see also Range v. Att'y Gen. United States*, 124 F.4th 218, 232 (3d Cir. 2024) (holding "narrowly" that § 922(g)(1) is unconstitutional as applied to defendant who more than two decades ago was convicted of food-stamp fraud and completed his sentence and where the record contains no evidence that he poses a physical danger to others). The relevant question then is whether the prior felony is the kind that

---

[6] Mr. Brazier's as-applied argument can hardly be called an argument as he merely mentions it and does not even touch on his predicate felony convictions. In the end though, it makes no difference because there simply is no meritorious argument for Mr. Brazier's proposition.

ordinarily indicates that the person cannot be trusted to use a gun responsibly, not whether everyone who commits the crime is necessarily dangerous or violent. Two of Mr. Brazier's five prior felonies—vehicular hijacking and domestic battery in the presence of a child—place him within the group of people whom Congress may reasonably regulate in relation to firearms possession.

Consider vehicular hijacking. According to the PSR, Mr. Brazier hijacked a car by the use of force, in violation of 720 Ill. Comp. Stat. 5/18-3(a)." (PSR, DE 28 ¶ 43.) In Illinois "[a] person commits vehicular hijacking when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force. . . . Vehicular hijacking is a Class 1 felony." 720 Ill. Comp. Stat. 5/18-3. The courts have found this offense to be a violent offense. *See e.g.*, *United States v. Cortez*, No. 24-CR-48, 2024 WL 4601954, at *18 (E.D. Wis. Oct. 29, 2024). ("To prove carjacking in violation of 18 U.S.C. § 2119, the government always must prove beyond a reasonable doubt the use, attempted use or threatened use of force. Applying the categorical approach, carjacking as charged in Count One qualifies as a "crime of violence" as defined by § 924(c).").

Same with domestic battery in the presence of a child. According to the PSR, Mr. Brazier hit and drug a woman he lived with by her hair in the presence of children:

> On January 10, 2016, officers were dispatched to a home on N. Brookfield St. in South Bend. Upon arrival, they spoke to [the victim] who advised she was a romantic partner of the defendant. She, her two children and the defendant had been living together since August 2015. Officers noticed [the victim's] hair was disheveled and she had redness and scratches on her neck. She explained she and the defendant had been in a verbal argument that turned physical when the defendant grabbed her by the neck causing pain and limiting her ability to breathe. He then drug her by the neck outside of the residence and pushed her outside all while her children were present; she and her children then fled the residence. The defendant denied hitting Ms. Barnes, but admitted he grabbed her and removed her from the home. . . .

22

(PSR, DE 28 ¶ 91.)

In light of these convictions, even an as-applied challenge offers no reasonable probability sufficient to undermine confidence in the outcome of Mr. Brazier's case. Simply put, Mr. Brazier's criminal history marks him as the kind of person whom the law does not trust to possess a firearm. *See United States v. Wiley*, 718 F. Supp. 3d 888, 898–99 (S.D. Ill. Feb. 21, 2024) ("Clearly, based on this documented propensity for breaching the law, including by the aggravated unlawful use of a weapon, Defendant is not beyond the reach of Congress' ability to rationally bar Second Amendment rights under the authorities discussed herein.") (appeal dismissed, No. 24-1421, 2024 WL 4212901 (7th Cir. Apr. 11, 2024)).

Mr. Brazier next suggests that procedural default should be set aside because he's actually innocent of possessing a firearm as a felon. In his words, "if the 7th Circuit's view is that 922(g) violations are unconstitutional, the federal court's refusal to consider the merits of his claim would amount to a fundamental miscarriage of justice because . . . [he] would be 'actually innocent' of the crime[] he was actually accused of." (Def.'s Mot., DE 39 at 2.) This is a very limited basis for relief. *See Fields v. United States*, No. 24-CV-248-JPS, 2024 WL 1138268, at *3 (E.D. Wis. Mar. 15, 2024)  ("'[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass' to overcome procedural default." (quoting *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019)). While Mr. Brazier makes some effort to invoke it, he does not articulate a coherent or legally sufficient actual innocence argument. To overcome procedural default on this ground, "the petitioner must show 'that more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt.' This standard seeks to 'ensure[ ] that petitioner's case is truly extraordinary . . . while still providing petitioner a meaningful avenue by which to avoid a manifest injustice.'" *Santiago v. Streeval*, 36 F.4th 700,

707 (7th Cir. 2022) (quoting *House v. Bell,* 547 U.S. 518, 538 (2006), and *Schlup v. Delo*, 513

U.S. 298, 327 (1995)).

> A prototypical example of 'actual innocence' in a colloquial sense is the case where
> the State has convicted the wrong person of the crime. Such claims are of course
> regularly made on motions for new trial after conviction in both state and federal
> courts, and quite regularly denied because the evidence adduced in support of them
> fails to meet the rigorous standards for granting such motions. But in rare instances
> it may turn out later, for example, that another person has credibly confessed to the
> crime, and it is evident that the law has made a mistake.

*Sawyer v. Whitley*, 505 U.S. 333, 340–41 (1992). The Seventh Circuit has "also found

that a petitioner was actually innocent when he established that he had been convicted of a non-

existent crime, or when he was categorically ineligible for the death sentence that had been

imposed." *Id.* (citing *In re Davenport*, 147 F.3d 605, 610–11 (7th Cir. 1998) (allowing § 2241

petition to proceed where prisoner showed he had been convicted of "using" a firearm in

committing a drug offense when he had merely possessed the firearm, which the Supreme Court

later held was not sufficient to establish crime of "use") (overruled in part on other grounds), and

*Webster v. Watson*, 975 F.3d 667 (7th Cir. 2020)). But as noted above, Mr. Brazier does not

claim actual innocence, nor does he advance any related arguments.[7] In fact, Mr. Brazier has

submitted no evidence of his actual innocence. So the inquiry ends here. *See Gladney v. Pollard*,

799 F.3d 889, 896 (7th Cir. 2015) ("The actual innocence gateway is narrow. [The defendant's]

procedural default can be excused only if he 'presents evidence of innocence so strong that a

court cannot have confidence in the outcome of the trial unless the court is also satisfied that the

trial was free of nonharmless constitutional error.'" (quoting *Schlup*, 513 U.S. at 316)). And to

---

[7] As with his waiver of the right to appeal or collaterally challenge his conviction and sentence, the
evidentiary support here—whether in the form of an affidavit, sworn statements, or otherwise—is entirely lacking.

the extent that he raises an argument for "legal innocence," based on 922(g)(1) being unconstitutional, as the discussion above demonstrates, that argument fails.

Since Mr. Brazier has waived and procedurally defaulted his *Bruen* challenge, the Court turns to Mr. Brazier's claims alleging ineffective assistance of counsel.

### (3)  *Ineffective Assistance of Counsel Claims*

Mr. Brazier supplemented his petition under § 2255 to add several claims for ineffective assistance of counsel (DE 52), alleging violations of the Sixth Amendment to the United States Constitution. "Because an ineffective assistance of counsel claim may be brought in a section 2255 motion regardless of whether the claim was raised on appeal, petitioner's ineffective assistance of counsel claims are not procedurally barred." *United States v. Foster*, No. 13 C 4193, 2017 U.S. Dist. LEXIS 511, *11 (N.D. Ill. Jan. 3, 2017) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

A criminal defendant is entitled to the assistance of counsel for his defense, U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and a defendant who was denied effective assistance of counsel can receive relief under § 2255, *Edmond v. United States*, 899 F.3d 446, 452–53 (7th Cir. 2018). To prevail on a claim of ineffective assistance of counsel, a defendant must show: 1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and 2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland*, 466 U.S. at 687; *Edmond*, 899 F.3d at 452–53; *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011).

"Surmounting *Strickland*'s high bar is never an easy task" since "the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

As to the first prong, the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness" resulting in a failure to function "as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the "wide range" of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted). "The important inquiry is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Koons*, 639 F.3d at 351 (internal quotation marks and citations omitted).

But even if the petitioner shows that counsel's performance fell below an objective standard of reasonableness, he would still have to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. Indeed, it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams v. Taylor*, 529 U.S. 362, 394 (2000) (endorsing the legal standard articulated by

the trial judge). Petitioner bears the "highly demanding and heavy burden of establishing actual prejudice." *Id.*

"Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, [the defendant] would not have pleaded guilty." *Galbraith*, 313 F.3d 1001, 1008. It's worth repeating that "'[s]urmounting *Strickland*'s high bar is never an easy task,' and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017) (citations omitted). To obtain relief on a claim that an attorney provided ineffective assistance by failing to properly advise a defendant on the consequences of a guilty plea, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). "[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Anderson v. United States*, 981 F.3d 565, 576 (7th Cir. 2020) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quoting *Berkey v. United States*, 318 F.3d 768, 772–73 (7th Cir. 2003))).

"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. "*Strickland*, 466

U.S. at 697. After all, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Id*.

With these principles in mind, the Court turns to Mr. Brazier's claims that his trial attorney failed to provide him with constitutionally required representation.

* * * * *

Before addressing Mr. Brazier's contentions, the Court must again emphasize that his allegations, to the extent they are present at all, are not accompanied by any evidence and lack factual detail regarding his interactions with Mr. Vandercoy or Mr. Vandercoy's conduct in representing him. Instead, he parrots the legal standards and makes conclusory assertions about receiving ineffective assistance of counsel. More is needed to allow the Court to analyze counsel's performance. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a motion under 28 U.S.C. § 2255 to "state the facts supporting each ground"). Moreover, allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce v. United States*, 256 F.3d 592, at 597 (7th Cir. 2001). Likewise, "mere speculation" does not warrant an evidentiary hearing. *Miller v. United States*, 183 Fed. Appx. 571, 578 (7th Cir. 2006). Given the lack of evidence, and because the record conclusively shows that Mr. Brazier is not entitled to any relief, the issues can be resolved without a hearing. That is to say that, even accepting Mr. Brazier's allegations (to the extent that they're presented at all) as true, there's no support for his claim that Mr. Vandercoy's representation fell below an objective standard of reasonableness or that Mr. Brazier was unduly prejudiced. *See Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) ("A § 2255 petitioner is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to relief. A

hearing, though, is not required when the files and records of the case conclusively show that the prisoner is entitled to no relief." (citations and quotation marks omitted)).

(a)  *Motion to Suppress*

Mr. Brazier first claims that Mr. Vandercoy failed to move to suppress his statements to police, which they obtained without advising him of his *Miranda* rights. (Pl.'s Br., DE 52 at 1; DE 69 at 1.) "When the alleged deficiency is based on counsel's failure to move to suppress evidence, a defendant must 'prove the motion was meritorious.'" *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021) (quoting *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017)). However, apart from stating that he was not informed of his *Miranda* rights, Mr. Brazier provides no other information. For example, he does not say what kind of statements he made to police and provides no analysis on whether they merit suppression. Nor does he show that but for the statements being admitted into evidence at trial, no reasonable jury would have convicted him. Without this information, the Court cannot determine whether Mr. Vandercoy's representation was deficient. Instead, Mr. Brazier's assertions once again amount only to conclusory allegations insufficient to grant him relief under § 2255. *Cf. Galbraith*, 313 F.3d at 1008–09 ("[Defendant] presents no scintilla of evidence of the alleged omission of his lawyer."). Without evidentiary support for his claim, it cannot proceed any further. *Id.* at 1009. As a result, the Court rejects Mr. Brazier's argument. *See Strickland*, 466 U.S. at 690 (holding counsel's conduct must be "outside the wide range of professionally competent assistance"); *Koons*, 639 F.3d at 351 (holding that counsel's conduct must have "amounted to incompetence under prevailing professional norms").

But even if the Court could somehow divine Mr. Brazier's intended argument, it would still fail because he has not shown that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). In fact, Mr. Brazier doesn't even present an argument on this point. As a result, Mr. Brazier has waived his claim. *See White v. United States*, 8 F.4th at 552.

But even if Mr. Brazier had not waived this argument, it would still fail. Mr. Brazier testified at his plea hearing that the police found the gun on his dashboard in "plain sight." (Plea Hrg. Tr., DE 61 at 34.) This evidence is uncontroverted and its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136–37 (1990) (holding that the Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view, even if the discovery of the evidence was not inadvertent); *see also United States v. Willis*, 37 F.3d 313, 316–17 (7th Cir. 1994) ("We recognize that the incriminating nature of a gun found partially hidden on the forward part of the console underneath the dashboard may be apparent in itself."). So regardless of any alleged violation of *Miranda*, it's difficult to conceive a different outcome in this case. Again, Mr. Vandercoy's alleged deficiency matters only if Mr. Brazier "could show that suppressing the firearm evidence likely would have changed the outcome of the trial," *Smith*, 989 F.3d at 581, but he has not made that showing.

(b)  *Constructive Possession*

Next, Mr. Brazier submits that Mr. Vandercoy "failed to explore 'the constructive aspects/ramifications despite a police report that clearly states that the gun in question was on the dashboard in the center console of the vehicle and not on [his] person." (Pl.'s Br., DE 52 at 1;

DE 69 at 1.) But here, too, Mr. Brazier shows no prejudice. Possession under 18 U.S.C. § 922(g)(1) may be shown through either actual or constructive possession. *See, e.g.*, *United States v. Walls*, 225 F.3d 858, 864 (7th Cir. 2000). He admits that the firearm was in the center console of the car. It is immaterial whether police found the gun on his person or on the dashboard of the car where he was sleeping. Whether Mr. Brazier "directly" possessed the gun or "constructively" possessed the gun is irrelevant to the outcome of his case. Therefore, Mr. Vandercoy's failure to challenge the manner of possession does not constitute deficient conduct either.

(c) *Plea Agreement*

Finally, Mr. Brazier states that Mr. Vandercoy "neglected to adequately explain the terms, conditions, forfeitures, and possible outcomes of signing the plea agreement and how all of that might affect his appellate rights." (Pl.'s Br., DE 52 at 1; DE 69 at 1.) He adds that Mr. Vandercoy "never visited [him] in jail before the signing of the plea." (*Id.*) According to Mr. Brazier, Mr. Vandercoy "repeatedly hurried, almost to the point of threatening or bullying [him] into signing the plea despite knowing [his] reservations about doing so." (Pl.'s Br., DE 52 at 1; DE 69 at 1.) Mr. Brazier says that Mr. Vandercoy told him that "if he took time to explain everything to [him], [he] would not receive his three-point reduction for acceptance of responsibility in a timely fashion." (*Id.*)

But Mr. Brazier's current allegations conflict with his prior statements in the record. Starting with the Plea Agreement, he affirmed that: his lawyer had "counseled and advised [him] as to the nature and cause of every accusation against [him] and as to any possible defenses [he] might have in this case (Plea Agreement, DE 17 ¶ 5); and he "believe[d] and fe[lt] that [his] lawyer [had] done all that anyone could do to counsel and assist [him]" (*id.* ¶ 11). Mr. Brazier

also declared that he offered his plea of guilty "freely and voluntarily and on [his] own accord, and no promises have been made to [him] other than those in this petition, nor [has he] been threatened in any way by anyone to cause [him] to plead GUILTY in accordance with this petition." (*Id.* ¶ 12.) As for his appeal rights, he stated that he understood "that the law gives a convicted person the right to appeal the conviction and the sentence imposed" and "that no one can predict the precise sentence that will be imposed." (*Id.* ¶ 9(e).) Yet, even with this understanding, he was expressly waiving his right to appeal or contest his conviction or sentence, or the manner in which his conviction was determined or imposed, "to any Court on any ground other than a claim for ineffective assistance of counsel . . . ." (*Id.*)

Next, at the plea hearing, Mr. Brazier further reaffirmed these statements under oath. He told the magistrate judge that he discussed the Plea Agreement with Mr. Vandercoy, understood it, and signed it. (Plea Hrg. Tr., DE 61 at 24–26.) Mr. Brazier said he believed his lawyer had "properly represented [him] in every way during the course of these proceedings." (*Id.* at 11.) According to Mr. Brazier, they discussed the charges against him and Mr. Vandercoy answered all his questions to his satisfaction. (*Id.* at 19.) Likewise, he understood the possible penalties and had no questions about them, and discussed with Mr. Vandercoy how the sentencing guidelines would apply in his case. (*Id.* at 22–23.) Mr. Brazier stated that he has had enough time to discuss his case and the Plea Agreement with Mr. Vandercoy and was satisfied with his legal representation. (*Id.* at 11.) He assured the magistrate judge that he was pleading guilty of his own free will and no one threatened either him or anyone else, or forced or pressured him or anyone else, to plead guilty. Likewise, no one made any promises or assurances or predictions to induce his guilty plea. (*Id.* at 24–26.) Early in the hearing, the magistrate judge explained that he could ask to speak to his attorney in private at any time, and he said he understood this option. (*Id.* at

9.) Finally, he confirmed that he understood his appeal rights and understood the scope of his appellate waiver. (*Id.* at 27–28.) In turn, with Mr. Brazier at his side, Mr. Vandercoy told the magistrate judge that he believed that Mr. Brazier "understands the charge, the material elements to which he intends to plead guilty" (*id.* at 21), without any protest from Mr. Brazier. After the Government's attorney proffered Mr. Brazier's offense conduct, the magistrate judge asked Mr. Vandercoy if he had "an opportunity to review the discovery material provided by the government" and if he believed that the "government could prove this charge if the matter went to trial." (*Id.* at 35.) He answered both questions in the affirmative. When the magistrate judge asked Mr. Brazier whether he, too, believed the Government could prove the charge at trial, he agreed. (*Id.* 35–36.)

When a defendant's post hoc assertions conflict with his prior statements on the record, he generally cannot establish deficient assistance of counsel. The record "is entitled to a presumption of verity," *United States v. Pike*, 211 F.3d 385, 390 (7th Cir. 2000), and the defendant's own statements at the plea hearing are also "presumed to be true," *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). "[T]he defendant bears a heavy burden to overcome this presumption." *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021). "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

While Mr. Brazier now contends that Mr. Vandercoy failed to adequately explain the terms of the Plea Agreement and how it might affect his appellate rights, he offers no explanation—let alone a persuasive one—for why his prior statements should be disregarded. Those statements appear both in the Plea Agreement and in his multiple affirmations at the plea

hearing, where he stated that he thoroughly reviewed and discussed the agreement with counsel before signing. *See Smith*, 989 F.3d at 582 ("We give special weight to a defendant's sworn testimony in a Rule 11 plea colloquy. That testimony is presumed true, and the defendant bears a heavy burden to overcome this presumption.") (citation omitted). His assertion that Mr. Vandercoy provided incomplete explanations and forcibly rushed him into signing the plea agreement merely seeks to replace his sworn statements with his current allegations. Even setting aside the fact that none of the current allegations are offered under oath, the Court can reconcile the two versions only by concluding that Mr. Brazier was not truthful during the plea proceedings. Put differently, his argument necessarily implies that he committed perjury at the time of his plea—an implication that, rather than supporting relief, only underscores why his claim must be rejected. Given the weight of the burden, Mr. Brazier has failed to carry it. *See United States v. Hayden*, 2013 WL 4026986, at *11 (N.D. Ind. Aug. 7, 2013) (rejecting an ineffective assistance claim because the defendant's allegations were "inconsistent with [his] sworn testimony at the change of plea hearing and his statements in the Plea Agreement itself"). Accordingly, there's no basis for the Court to find that Mr. Vandercoy provided deficient representation during the plea negotiations.

What's more, Mr. Brazier has not shown that he was prejudiced by Mr. Vandercoy's representation. Nothing in his filings suggests a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Smith*, 989 F.3d at 581 (quoting *Lee v. United States*, 582 U.S. 357, 365 (2017)). Mr. Brazier does not argue as much and provides no contemporaneous evidence to substantiate his expressed preferences. *See Lee*, 582 U.S. at 369. Certainly, there's nothing to convince the Court that his decision to reject the plea bargain would have been rational. After all, Mr. Brazier had no apparent viable

defense, given that the gun was found near him while he was sleeping alone. By pleading guilty, he earned the benefit of a three-level reduction in his offense level for acceptance of responsibility, as well as the Government's promise to recommend a sentence at the low end of the guidelines, both of which Mr. Brazier acknowledged during his plea hearing. (Plea Hrg. Tr., DE 61 at 30–31.) Since Mr. Brazier has shown neither deficient performance by counsel nor a reasonable probability that he would have rejected the plea and proceeded to trial with better representation, the Court will not disturb either his guilty plea or his sentence.

(d) *Mr. Thomas's Claims Raised for the First Time in the Reply Brief in Support of His Claim for Ineffective Assistance of Counsel*

In his supplement to the reply brief Mr. Brazier submits for the first time that Mr. Vandercoy failed to argue that, after *Bruen*, 142 S. Ct. 2111, it is clear that § 922(g)(1) violates the Second Amendment on its face and as applied to him.[8] (DE 69 at 2; 70 at 1.) There are several problems with these assertions. First, the contentions raised for the first time in a reply brief are waived because the Government has not had a chance to address them. *See, e.g.*, *Farmer v. United States*, No. 11-CR-40073-JPG-001, 2015 WL 588569, at *1 (S.D. Ill. Feb. 11, 2015), aff'd, 867 F.3d 837 (7th Cir. 2017) ("Farmer advances in her reply brief several arguments she had not raised in her earlier briefing. The Court disregards these arguments, which she could have and should have made in her original briefing. It has long been established that arguments in support of a § 2255 motion that are raised for the first time in a reply brief are

---

[8] A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. Mr. Brazier brings both a facial and an as-applied challenge. To succeed on a facial challenge, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the defendant must show it is unconstitutional because of the way it was applied to the particular facts of his case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

waived. This rule holds true even if the movant is proceeding pro se. This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief.") (citing *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998)); *see also Whipp v. Miller*, No. 22-CV-1350-JPS, 2024 WL 3470344, at *3 (E.D. Wis. July 19, 2024) (noting that an issue raised only in the reply brief is waived). Worse yet, the issues are presented in conclusory fashion without any analysis—another basis for waiver. *See White*, 8 F.4th at 552.

Second, Mr. Brazier's contentions fail because he cannot show that he was prejudiced by Mr. Vandercoy's failure to raise the *Bruen* arguments he now invokes. As explained in the procedural default context above, even if Mr. Vandercoy had raised a Second Amendment challenge to § 922(g)(1)—either facially or as-applied—Mr. Brazier cannot show that it would have had merit. *See Fields v. United States*, No. 24-CV-248-JPS-JPS, 2024 WL 1138268, at *6 (E.D. Wis. Mar. 15, 2024) (noting that the prejudice analysis is the same for both procedural default and ineffective assistance of counsel claims) (citing *McCleese v. United States*, 75 F.3d 1174, 1179–80 (7th Cir. 1996).

But even assuming that Mr. Brazier could show that the arguments he now advances had merit he has not shown—and has not even argued—that but for his counsel's alleged errors, he would not have pleaded guilty and would have gone to trial. While "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice," *Anderson*, 981 F.3d at 57, Mr. Brazier has not even done that. As before, he's silent on this issue, giving no reason to believe "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, Mr. Brazier has failed to demonstrate that he has suffered any prejudice because of his guilty plea. *See United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (noting that a

defendant must present objective evidence that he would have gone to trial)*; see United States v. Multani*, 420 F. App'x 621, 624 (7th Cir. 2011) (rejecting an ineffective assistance claim where "there is nothing in the record or in [the petitioner's] Rule 51(b) response suggesting that [he] would not have pleaded guilty had the court discussed with him the forfeiture count at the plea colloquy"); *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) ("We find that [the defendant's] ineffective assistance claim fails because he did not adequately show that he would not have pled guilty even had his attorney fully explained to him that a Rule 35 motion to reduce his sentence was not guaranteed.") (citations omitted).

Finally, Mr. Brazier's claim that Mr. Vandercoy's representation fell below an objective standard of reasonableness is unavailing in any case. Defense attorneys are generally not obliged to anticipate changes in the law, *see, e.g.*, *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (deeming "meritless" the defendant's argument that his attorney should have anticipated *Apprendi* "because our cases provide that '[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law'" (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)). *See also Lickers v. United States*, 98 F.4th 847, 857 (7th Cir. 2024) ("Nor is counsel required to make arguments that have little chance of success. Just because an argument has some remote chance of prevailing does not mean that a lawyer is constitutionally deficient for failing to bring it. Whether a lawyer provides ineffective assistance by failing to raise an argument depends in important part on its likelihood of success."). As explained above, most of the courts in the Circuit hold that § 922(g)(1) does not violate the Second Amendment. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). Mr. Brazier has not identified any acts or

omissions that could not be the result of professional judgment. Mr. Vandercoy could not have been deficient in his representation by omitting an argument that had little chance of success. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). In light of the status of the case law at the time of Brazier' change of plea, it cannot reasonably be said that counsel performed deficiently by not challenging the constitutionality of the statute given Brazier' criminal history of violent conduct.[9]

### (D)  Motion for Appointment of Counsel

Along with his motion under § 2255, Mr. Brazier is requesting that the Court appoint him counsel (DE 39 & 41.) He indicates that, among other things, he needs counsel because he lacks access to the law library as a result of frequent lockdowns at the prison. (DE 41, 51, 52, 54, 68.)

"A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel. Rule 8(c) of the Rules Governing Section 2255 Proceedings, however, requires that counsel be appointed for indigent prisoners if an evidentiary hearing is required." *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992). But, as explained above, no hearing is necessary to address Mr. Brazier's claims.

---

[9] Mr. Brazier also makes several passing references to Mr. Vandercoy's representation. For example, he asserts that Mr. Vandercoy handled his case with less interest than he would have if he had been retained by Mr. Brazier or his family, rather than appointed by the court. (Def.'s Br., DE 69 at 2.) He also implies that, had Mr. Vandercoy acted in his best interest, he would have received a better sentence. (*Id.*) The Court need not address these contentions separately, as they suffer from the now-familiar flaws: they first appear in Mr. Brazier's reply brief; they are conclusory and undeveloped; and they are so vague that the Court cannot even begin to analyze them. For these reasons, all such claims must be dismissed outright.

In addition, a court may appoint counsel for a § 2255 motion under 18 U.S.C. § 3006A(a)(2)(B) "if the interests of justice so require." Here, however, Mr. Brazier's claims lack merit on their face. Moreover, to the extent that Mr. Brazier's access to the library has been hindered by frequent lockdowns, the Court has granted each of his requests for briefing extensions to accommodate both his pro se status and those external hardships. Therefore, the interests of justice do not support the discretionary appointment of counsel, and his motion for appointment of counsel will be denied.

### (E) Certificate of Appealability is Unwarranted

The Court declines to issue a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). For the reasons the Court already discussed in denying the motion, the Court does not believe that the resolution of this motion is debatable or that the issues deserve encouragement to keep proceeding.

The Court advises Mr. Brazier, though, that under Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. If Mr. Brazier wishes to appeal this judgment,

a notice of appeal must be filed within 60 days after the judgment is entered. Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts; Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006).

### F. Conclusion

For these reasons, the Court—

- GRANTS motion to add claims to Mr. Brazier's original motion under § 2255 (DE 52);

- DENIES his motions for appointed counsel (DE 39 & 41); and

- DISMISSES all of Mr. Brazier's claims under § 2255 (DE 40).

SO ORDERED.

ENTERED: May 14, 2025

                            /s/ JON E. DEGUILIO
                            Judge
                            United States District Court